IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| AMY J.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 3:20-cv-00067 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| KILOLO KIJAKAZI, | ) | By:   Joel C. Hoppe |
| Acting Commissioner of Social Security, | ) |        United States Magistrate Judge |
|     Defendant.[2] | ) | |

      Plaintiff Amy J. asks this Court to review the Commissioner of Social Security's final decision denying her claim for a closed period of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. ECF No. 1. She argues that the Administrative Law Judge ("ALJ") made several errors in evaluating Amy's residual functional capacity ("RFC") and asks the Court to reverse the decision and remand with instructions for the Commissioner to award benefits or, alternatively, remand the case for rehearing. *See generally* Pl.'s Br. 8–14, ECF No. 14. In May 2021, after Amy filed her merits brief, ECF No. 14, the Commissioner moved to remand for rehearing under the fourth sentence of 42 U.S.C. § 405(g), Def.'s Mot. to Remand, ECF No. 17. The Commissioner agrees that remand is warranted in Amy's case, but he argues that a court-ordered award of benefits is not appropriate because the record contains conflicting evidence and "essential factual issues" relevant to Amy's RFC "have not been resolved." *See* Def.'s Br. 2–3, ECF No. 18. Amy now opposes remand for rehearing because, in her view, her "fully developed" record contains substantial evidence to "direct[] a

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named Defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

finding" that Amy was disabled between October 13, 2017, and November 22, 2018. *See* Pl.'s Reply Br. 3–4, ECF No. 19.

*A.     Summary*

In December 2017, Amy filed for DIB alleging that she was disabled by stage 3 colon cancer and the side effects of chemotherapy and radiation treatment. *See* Administrative Record ("R.") 66–67, ECF No. 11-1. She stopped working as a rural mail carrier on October 13, 2017, which was the same date she underwent colorectal surgery to remove a large mass near her anus. *See* R. 70–71. Amy completed cancer treatment, including two surgeries, chemotherapy, and wearing an ileostomy bag, in September 2018. *See* R. 160, 183, 208. In forms submitted to the agency, Amy alleged that her cancer treatment made her feel weak, tired, forgetful, and nauseous, and caused numbness in her hands and feet. *See* R. 154, 156–57, 160, 163–64 (Apr. 2018); R. 176, 178, 180–81, 183 (Aug. 2018). These symptoms impaired her abilities to lift more than a few pounds, sit and stand/walk for prolonged periods, use her hands, remember things, concentrate, R. 156–58, 160, 181, and perform even "simple chores or activities" of daily living, R. 183; *see* R. 154–57, 177–81. The DDS physician who reviewed Amy's records in October 2018 opined that she could lift and carry twenty pounds occasionally and ten pounds frequently; sit and stand and/or walk for about six hours each during a normal eight-hour workday; frequently balance; and occasionally climb, stoop, kneel, crouch, or crawl. R. 91–92; *see* R. 88 ("She reports trouble with standing and walking, however, she does not require an assistive device. She is capable of light work."). He attributed these limitations to "[r]ectal cancer with chemoradiation and surgery" and a "temporary ileostomy." R. 91–92. Amy went back to work in late November 2018. R. 56.

In September 2019, Amy appeared with counsel at a hearing before ALJ Suzette Knight.

She testified that she could not work between October 13, 2017, and November 22, 2018 (the "closed period"), because during that time she had two surgeries and chemotherapy caused extreme fatigue, neuropathy in her hands, and painful blisters on her feet and genitals. *See* R. 52–54, 56. Amy testified that she finished cancer treatment in September 2018, R. 53, but it took another "two months" or so for her symptoms to resolve, R. 55. In October, she had surgery to repair an abdominal hernia, which limited her abilities to lift more than about five pounds. *See* R. 55. Amy returned to work as a rural mail carrier in late November 2018, but she had to hire someone who could lift and carry the "heavier" packages while she continued to recover from her cancer treatments. R. 57.

\*

ALJ Knight issued an unfavorable decision on October 8, 2019. R. 12–20. She found that Amy's "malignant neoplasm of the colon, rectum[,] or anus" was a severe impairment during the closed period, R. 14, but it did not meet or medically equal the relevant listing for inoperable or recurring malignant tumors, *id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 13.18). Next, she determined that Amy retained the RFC to perform "light work"[3] with only occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps, stairs, ladders, ropes, and scaffolds. *Id.* This RFC ruled out Amy's ability to work as a mail carrier during the closed period. R. 19 (citing R. 59–60). ALJ Knight concluded that Amy was not disabled during this time, however, because she could have performed less physically demanding occupations (garment sorter, folder, fruit cutter) that offered a significant number of jobs in the national economy. R. 20

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A person who can meet these relatively modest lifting requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at \*2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at \*5–6 (Jan. 1, 1983).

3

(citing R. 60). By denying benefits for the closed period, ALJ Knight necessarily found that Amy could meet these occupations' physical and mental demands for eight hours a day, five days per week (or equivalent schedule) despite her cancer-related symptoms and treatment side effects. *See* SSR 96-8p, 1996 WL 374184, at *2, *5 (July 2, 1996); *cf.* R. 61 (vocational expert's testimony that a person who needed "to miss two or more days [of work] per month due to health-related reasons" could not maintain substantial gainful employment).

As part of her RFC assessment, ALJ Knight found that Amy's colorectal cancer "could reasonably be expected to cause" the symptoms Amy had described at the hearing and in earlier reports to the agency, R. 15–16, but that Amy's statements about "the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," for three reasons, R. 16. First, Amy's physical exams consistently revealed "normal gait, no loss of muscle strength[,] and no myalgias." R. 17. This "objective evidence . . . [did] not fully support" Amy's allegations that the side effects of her cancer treatment prevented her from working "because she could not sit, stand or walk for very long, had trouble using her hands, and experienced pain and fatigue" that made it difficult "to complete even routine daily tasks." *Id*. Second, although Amy's medical records did show she experienced "intermittent neuropathy," occasional "fatigue, nausea, and diarrhea," and some "dizziness and insomnia," these "abnormalities [were] not present consistently" and the "side effects mostly resolved following treatment." *Id.*; *see also* R. 17–19. Third, Amy's "admitted ability to perform a variety of daily tasks" during the closed period, namely her abilities to "care for her personal needs, prepare some meals, drive, and shop," indicated her "symptoms were not as limiting as alleged." R. 17. ALJ Knight concluded that her RFC finding for light work with some postural limitations was "supported by" the DDS reviewer's medical opinion and "the

4

testimony received at the hearing, as well as the medical evidence and source statements in the record" showing that Amy "experienced intermittent side effects of treatment and her impairment during the period at issue[.]" R. 19. *But see id.* ("[T]he undersigned [ALJ] assesses exertional and postural limitations consistent with the *persuasiveness of the medical* evidence." (emphasis added)).

B.  *Discussion*

The Commissioner seeks a "sentence four" remand in this case. Def.'s Mot. to Remand 1–3 (citing 42 U.S.C. § 405(g)). The fourth sentence of § 405(g) authorizes federal courts to enter "judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's only role in reviewing such decisions is to determine whether the Commissioner's "findings are supported by substantial evidence" in the claimant's record "and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). "A necessary predicate to engaging" in this review "is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.* "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). There are exceptions, of course, such as cases where the claimant's otherwise fully developed "record does not contain substantial evidence to support a decision denying [benefits] under the correct legal standard," *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974), "the delay involved in repeated [federal-court] remands has become

unconscionable, or the agency has displayed obduracy in complying with the law as set down by the court," *Ellis v. Colvin*, No. 5:13cv43, 2014 WL 2862703, at *17 (W.D. Va. June 24, 2014) (quoting *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 800 (E.D. Wis. 2004)). *See Radford*, 734 F.3d at 295 (citing *Breeden*, 493 F.3d at 1011–12). The district court has discretion to choose the appropriate remedy. *See id.*; *McKinney v. Colvin*, 111 F. Supp. 3d 663, 666 (E.D.N.C. 2015).

\*

In her merits brief, Amy challenged ALJ Knight's reasons for rejecting Amy's subjective allegations that her cancer-related pain, fatigue, weakness, and numbness "were so continuous and/or so severe that they prevented her from working a full eight hour day," *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 96 (4th Cir. 2020) (cleaned up), during the closed period. *See generally* Pl.'s Br. 9–14. First, she noted that ALJ Knight "cited evidence that [she] appeared to believe tended to discredit [Amy's] testimony" on those points, but that the ALJ's conclusory discussion "failed to build an accurate and logical bridge from the evidence to [her] conclusion that [Amy's] testimony was not credible," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). *See* Pl.'s Br. 10–11 (arguing that the ALJ failed to explain how evidence that adverse side effects from chemotherapy and other "abnormalities mostly resolved following treatment" undermined Amy's testimony, as "[t]his was the entire reason" she requested benefits for a thirteen-month closed period). She also argued that ALJ Knight did not consider the limited extent of Amy's daily activities while she underwent treatment and, separately, failed to explain how the activities the ALJ cited supported a finding that Amy could do light-exertion work for eight hours a day, five days per week during this time, *see Brown v. Comm'r, Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017). Pl.'s Br. 12–13. Amy asked the court to reverse the ALJ's decision and remand with instructions for the Commissioner to award benefits for the closed period or, alternatively,

6

remand the case for rehearing. *Id.* at 1, 14. She now opposes remand for rehearing because, in her view, her "fully developed" record contains substantial evidence to "direct[] a finding" that Amy was disabled between October 13, 2017, and November 22, 2018. *See* Pl.'s Reply Br. 3–4.

I agree that Amy's record was fully developed at the agency level. *Cf. Crank v. Saul*, No. 3:20cv175, 2021 WL 955913, at *8–9 (S.D. W. Va. Feb. 25, 2021) (finding claimant's record was "fully develop[ed]" where it contained sufficient evidence for ALJ to perform the required "function-by-function [RFC] analysis and make an informed decision" about the nature and severity of the claimant's alleged disability), *adopted* 2021 WL 951751 (S.D. W. Va. Mar. 12, 2021). Nonetheless, Amy's position that "substantial evidence in the record as a whole directs a finding that [she was] disabled" during the closed period, Pl.'s Reply Br. 3, does not justify reversal and remand for an award of benefits. In the Fourth Circuit, the standard is whether a claimant's "record *does not* contain substantial evidence to support a decision *denying* [benefits] under the correct legal standard." *Breeden*, 493 F.2d at 1012 (emphasis added). "Critically, '[t]he possibility of drawing two inconsistent conclusions from the same evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Candi L. v. Comm'r of Soc. Sec.*, No. 4:17cv30, 2018 WL 7690318, at *13 (W.D. Va. July 31, 2018) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)), *adopted*, 2019 WL 1264890 (W.D. Va. Mar. 19, 2019), *aff'd*, 808 F. App'x 210 (4th Cir. 2020); *accord Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.").

Amy's record contains conflicting evidence relevant to her RFC during the closed period. In October 2018, for example, the DDS physician opined that Amy could perform light work for eight hours a day, five days per week. *See* R. 88, 91–92. Amy, on the other hand, consistently

7

alleged that she could not meet the physical demands of light work and that her cancer symptoms and treatment side effects prevented her from working during the closed period. *See, e.g.*, R. 52–57, 154, 156–57, 160, 176–81, 183. It was ALJ Knight's responsibility to weigh this conflicting evidence under the correct legal standards, to identify which evidence she found credible and why, and to provide an accurate and logical explanation how the evidence supports her RFC findings. *See Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019); *Woods*, 888 F.3d at 694; *Brown*, 873 F.3d at 268–72. ALJ Knight's failure to logically explain why she apparently rejected Amy's allegations means the court "cannot gauge the propriety of the ALJ's RFC assessment" or determine "that substantial evidence supports the ALJ's denial of benefits." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017). "Harmonizing conflicting evidence and bolstering inconclusive findings requires credibility determinations that [the court] cannot make" in the first instance. *Id.* "Put simply, the ALJ's lack of explanation requires remand" for rehearing. *Id.* at 663 (cleaned up); *see, e.g.*, *Felicia T. v. Saul*, No. 4:20cv33, 2021 WL 2910206, at *6 (W.D. Va. July 12, 2021).

Moreover, although Amy filed this DIB claim almost four years ago, the Commissioner's decision to deny benefits is on its first appeal and, as such, the agency has not "displayed obduracy in complying with the law as set down by the court" on a prior remand, *Ellis*, 2014 WL 2862703, at *17. *Cf. Felicia T.*, 2021 WL 2910206, at *6 (declining to award benefits on a post-remand appeal where ALJ failed to explain material conflicts in RFC assessment, even though claim had been pending for almost nine years); *Ellis*, 2014 WL 2862703, at *17 (declining to award benefits on a post-remand appeal where ALJ failed to explain material conflicts in the RFC assessment, even though claim had been pending for almost eight years and facts presented "a close case, particularly given the small amount of benefits involved").

8

*C.     Conclusion*

I take no position on whether Amy is entitled to disability benefits between October 2017 and November 2018. On remand, the ALJ must consider and apply the correct legal rules to all the relevant evidence in the record; explain how any material inconsistencies or ambiguities were resolved at each critical stage of the determination; and, assuming Amy cannot prove that she was disabled based on the medical evidence alone, provide a logical link between the evidence the ALJ found credible and the RFC determination.

For the foregoing reasons, I respectfully recommend that the presiding District Judge **GRANT** the Commissioner's motion to remand, ECF No. 17, **DENY AS MOOT** the Plaintiff's motion for summary judgment, ECF No. 13, **REVERSE** the Commissioner's final decision, **REMAND** the matter for rehearing under the fourth sentence of 42 U.S.C. § 405(g), and **DISMISS** the case from the court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to counsel of record.

ENTER: October 21, 2021

*Joel C. Hoppe*

Joel C. Hoppe
United States Magistrate Judge